## STATE BOARD OF EQUALIZATION OF CALIFOR-NIA ET AL. *v.* YOUNG'S MARKET CO. ET AL.

No. 22. Argued October 19, 1936.—Decided November 9, 1936.

*Mr. Walter L. Bowers,* with whom *Mr. U. S. Webb,* Attorney General of California, was on the brief, for appellants.

*Messrs. M. J. Donnelly* and *Frederick H. Wood,* with whom *Messrs. C. J. Lynch, Jr.,* and *William M. Dallas* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit, brought in the federal court for southern California, challenges the validity, under the Twenty-first Amendment of the Federal Constitution, of the provisions of a statute of that State, and of the regulations thereunder, which impose a license-fee of $500 for the privilege of importing beer to any place within its borders.[1] The license does not confer the privilege of selling.[2] Compare *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226.

The plaintiffs are domestic corporations and individual citizens of California who sue on behalf of themselves and of others similarly situated. Each is engaged in selling at wholesale at one or more places of business within the

---

[1] The lower courts have differed on this question. See *Triner Corporation* v. *Arundel,* 11 F. Supp. 145; *Premier-Pabst Sales Corp.* v. *Grosscup,* 12 F. Supp. 970; *General Sales & Liquor Co.* v. *Becker,* 14 F. Supp. 348; *Pacific Fruit & Produce Co.* v. *Martin,* 16 F. Supp. 34. See also the following unreported decisions: *Premier-Pabst Sales Co.* v. *McNutt,* D. Ind., January 4, 1935; *Philip Blum & Co.* v. *Henry,* E. D. Wis., March 28, 1936.

[2] Constitution of the State of California, Art. XX, § 22, as amended November 6, 1934; Alcoholic Beverage Control Act, June 13, 1935, c. 330, § 2, (k); § 3; § 5, (8), (13); § 6, (d), (f); § 7; § 49; §§ 10, 11; § 31; Rules of State Board of Equalization, Rule 9, (a), (e).

State beer imported from Missouri or Wisconsin; and has a wholesaler's license which entitles the holder to sell there to licensed dealers beer lawfully possessed, whether it be imported or is of domestic make. For that license the fee is $50. Each plaintiff has refused to apply for an importer's license, claiming that the requirement discriminates against wholesalers of imported beer; and that, hence, the statute violates both the commerce clause and the equal protection clause. The bill alleges that heavy penalties are exacted for importing, or having in possession, imported beer without having secured an importer's license; that unless enjoined defendants will enforce the statute; that enforcement would subject each of the plaintiffs to irreparable injury; and that the matter in controversy exceeds $3000.

The several state officials charged with the duty of enforcing the statute, were joined as defendants, and made return to an order to show cause. They assert that the challenged statutory provisions and regulations are valid because of the Twenty-first Amendment, ratified December 5, 1933, which provides, by § 2:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

*First.* The main contention of the plaintiffs is that the exaction of the importer's license fee violates the commerce clause by discriminating against the wholesaler of imported beer. But there is no discrimination against them *qua* wholesalers. Everyone holding a wholesaler's license who is lawfully possessed of any beer, may sell it. The fee exacted for the privilege of selling, and the conditions under which a sale may be made, are the same whether the beer to be sold is imported or domestic or is both. The difference in position charged as a discrimination is not in the terms under which beer may be sold.

It arises from the fact that no one may import beer without securing a license therefor. What the plaintiffs complain of is the refusal to let them import beer without paying for the privilege of importation. Prior to the Twenty-first Amendment it would obviously have been unconstitutional to have imposed any fee for that privilege. The imposition would have been void, not because it resulted in discrimination, but because the fee would be a direct burden on interstate commerce; and the commerce clause confers the right to import merchandise free into any state, except as Congress may otherwise provide. The exaction of a fee for the privilege of importation would not, before the Twenty-first Amendment, have been permissible even if the State had exacted an equal fee for the privilege of transporting domestic beer from its place of manufacture to the wholesaler's place of business. Compare *Case of the State Freight Tax*, 15 Wall. 232, 274, 277. Thus, the case does not present a question of discrimination prohibited by the commerce clause.

The Amendment which "prohibited" the "transportation or importation" of intoxicating liquors into any state "in violation of the laws thereof," abrogated the right to import free, so far as concerns intoxicating liquors. The words used are apt to confer upon the State the power to forbid all importations which do not comply with the conditions which it prescribes. The plaintiffs ask us to limit this broad command. They request us to construe the Amendment as saying, in effect: The State may prohibit the importation of intoxicating liquors provided it prohibits the manufacture and sale within its borders; but if it permits such manufacture and sale, it must let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment, but a rewriting of it.

The plaintiffs argue that, despite the Amendment, a State may not regulate importations except for the purpose of protecting the public health, safety or morals; and that the importer's license fee was not imposed to that end. Surely the State may adopt a lesser degree of regulation than total prohibition. Can it be doubted that a State might establish a state monopoly of the manufacture and sale of beer, and either prohibit all competing importations, or discourage importation by laying a heavy impost, or channelize desired importations by confining them to a single consignee? Compare *Slaughter-House Cases*, 16 Wall. 36; *Vance* v. *W. A. Vandercook Co. (No. 1)*, 170 U. S. 438, 447. There is no basis for holding that it may prohibit, or so limit, importation only if it establishes monopoly of the liquor trade. It might permit the manufacture and sale of beer, while prohibiting hard liquors absolutely. If it may permit the domestic manufacture of beer and exclude all made without the State, may it not, instead of absolute exclusion, subject the foreign article to a heavy importation fee? Moreover, in the light of history, we cannot say that the exaction of a high license fee for importation may not, like the imposition of the high license fees exacted for the privilege of selling at retail, serve as an aid in policing the liquor traffic. Compare *Phillips* v. *Mobile*, 208 U. S. 472, 479.

The plaintiffs argue that limitation of the broad language of the Twenty-first Amendment is sanctioned by its history; and by the decisions of this Court on the Wilson Act, the Webb-Kenyon Act and the Reed Amendment.[3] As we think the language of the Amendment is

---

[3] *E. g., In re Rahrer*, 140 U. S. 545; *Scott* v. *Donald*, 165 U. S. 58; *Vance* v. *W. A. Vandercook Co. (No. 1)*, 170 U. S. 438; *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311; *Seaboard Air Line Ry.* v. *North Carolina*, 245 U. S. 298; *McCormick & Co.* v. *Brown*, 286 U. S. 131.

clear, we do not discuss these matters. The plaintiffs insist that to sustain the exaction of the importer's license-fee would involve a declaration that the Amendment has, in respect to liquor, freed the States from all restrictions upon the police power to be found in other provisions of the Constitution. The question for decision requires no such generalization.

*Second.* The claim that the statutory provisions and the regulations are void under the equal protection clause may be briefly disposed of. A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth. Moreover, the classification in taxation made by California rests on conditions requiring difference in treatment. Beer sold within the State comes from two sources. The brewer of the domestic article may be required to pay a license-fee for the privilege of manufacturing it; and under the California statute is obliged to pay $750 a year. Compare *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563. The brewer of the foreign article cannot be so taxed; only the importer can be reached. He is subjected to a license-fee of $500. Compare *Kidd* v. *Alabama,* 188 U. S. 730, 732.

*Reversed.*

Mr. Justice Butler concurs in the result.

Mr. Justice Stone took no part in the consideration or decision of this case.